UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DELL CULLUM,<br><br>     Plaintiff,<br><br>  v.<br><br>TETON COUNTY, a body politic and corporate within the State of Idaho, LLOYD WISER, in his individual and official capacity, and LOUIS SIMONET, in his individual and official capacity,<br><br>     Defendants. | Case No. 4:10-CV-293-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiff's Motion to Amend (Dkt. 11) and Defendants' Motion to Dismiss (Dkt. 15).

## BACKGROUND

The Plaintiff, Dell Cullum, was employed by Defendant Teton County and worked at Teton County's solid waste processing facility. *Proposed Amended Complaint*, Dkt. 11-1 at ¶ 10. Defendant Lloyd Wiser was Mr. Cullum's immediate supervisor; Defendant Louis Simonet oversaw the entire facility. *Id.* at ¶¶ 11-12.

In early 2009, Mr. Cullum interceded on behalf of a co-worker whom Mr. Wiser was physically attacking and verbally abusing. Mr. Cullum reported the incident to Teton

County.  *Id.* at ¶¶ 14-17.

On July 17, 2009, Mr. Wiser accused Mr. Cullum of damaging a piece of equipment the two were repairing.  *Id.* at ¶ 19.  Mr. Wiser became verbally aggressive with Mr. Cullum, prompting Mr. Cullum to walk away.  *Id.* at ¶ 21.  Mr. Wiser twice blocked Mr. Cullum's exit while continuing to verbally abuse him.  *Id.* at ¶¶ 22-26.  Mr. Wiser struck Mr. Cullum in the chest three times before Mr. Cullum was able to leave the solid waste facility.  *Id.* at ¶ 27.

Mr. Cullum went directly to the Teton County administrative office and asked to speak to Defendant Louis Simonet.  *Id.* at ¶¶ 29-30.  Unable to speak with Mr. Simonet, Mr. Cullum went to the Teton County Sheriff's office and reported the incident with Mr. Wiser.  *Id.* at ¶¶ 31-32.

Later that day, Mr. Simonet gave Mr. Cullum a termination notice.  The notice stated that Mr. Cullum had (1) been insubordinate, (2) damaged county property, (3) failed to follow instructions, and (4) engaged in abusive conduct.  The notice stated that Mr. Cullum could request a hearing from Teton County within fourteen days.  The Teton County employee manual also stated that a fired employee had the right to a name clearing hearing.  *Id.* at ¶¶ 33-35.  Mr. Cullum timely requested a hearing, but Teton County did not provide one or respond to his request.  *Id.* at ¶¶ 36-37.

On December 10, 2009, pursuant to I.C. § 6-901 ("Idaho tort claims act"), Mr. Cullum presented his claims to Teton County.  Teton County declined to respond thereto. *Id.* at ¶ 42.  On June 11, 2010, Mr. Cullum filed a complaint with this Court against

Teton County, Mr. Wiser, and Mr. Simonet. *Complaint*, Dkt. 1. A proposed amended

complaint, along with a motion for leave to file, was filed on December 14, 2010. *Motion

to Amend/Correct*, Dkt. 11. Mr. Cullum asserts two causes of action under 42 U.S.C. §

1983: violation of bodily integrity and deprivation of due process. Mr. Cullum invokes

supplemental jurisdiction to assert three state law causes of action: assault, battery, and

infliction of emotional distress. *Proposed Amended Complaint*, Dkt. 11. The Defendants

filed a motion to dismiss the proposed amended complaint on December 28, 2010.

*Response to Motion to Amend/Correct and Motion to Dismiss*, Dkt. 15.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

of the claim showing that the pleader is entitled to relief," in order to "give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). While a complaint

attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual

allegations," it must set forth "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

"state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556.

The plausibility standard is not akin to a "probability requirement," but it asks for more

than a sheer possibility that a defendant has acted unlawfully.  *Id.*  Where a complaint

pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the

line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

In a more recent case, the Supreme Court identified two "working principles" that

underlie *Twombly.*  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  First, the tenet

that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions.  *Id.*  "Rule 8 marks a notable and generous departure

from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 1950.

 Second, only a complaint that states a plausible claim for relief survives a motion to

dismiss.  *Id.*  "Determining whether a complaint states a plausible claim for relief will . . .

be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."  *Id.*

Providing too much in the complaint may also be fatal to a plaintiff.  Dismissal may

be appropriate when the plaintiff has included sufficient allegations disclosing some

absolute defense or bar to recovery.  *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783,

n.1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision

one way, that is as good as if depositions and other . . . evidence on summary judgment

establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the

complaint "could not be saved by any amendment."  *Harris v. Amgen, Inc.*, 573 F.3d 728,

737 (9th Cir. 2009) (issued 2 months after *Iqbal*).[1]  The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990).  The issue is not whether a plaintiff will prevail but whether he "is entitled to offer evidence to support the claims."  *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice.  *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987).  The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment.  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866 (9th Cir. 2004).  The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

---

[1] The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim. . .."  Given *Twombly* and *Iqbal*'s rejection of the liberal pleading standards adopted by *Conley*, a question arises whether the liberal amendment policy of *Harris v Amgen* still exists.  Nevertheless, the Circuit has continued to apply the liberal amendment policy even after dismissing claims for violating *Iqbal* and *Twombly*.  *See Market Trading, Inc. v. AT&T Mobility, LLC*, 2010 WL 2836092 (9th Cir. July 20, 2010) (not for publication).  Accordingly, the Court will continue to employ the liberal amendment policy.

**ANALYSIS**

**1.      Plaintiff's Motion to Amend**

The Defendants do not oppose Mr. Cullum's motion to amend, and premise their motion to dismiss on the proposed amended complaint.  There is no undue delay, bad faith, or prejudice to the Defendants.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed R. Civ. P. 15(a)(2).  Mr. Cullum's motion to amend is granted.

**2.      Defendants' Motion to Dismiss**

      1.      <u>Bodily Integrity</u>

            a.      Defendant Wiser

Taking as true Mr. Cullum's allegations that Mr. Wiser struck him three times in the chest, the Court must determine whether such allegations state a plausible substantive due process claim.

"The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (citations omitted).  The relevant inquiry in distinguishing simple tort actions from substantive due process violations is "whether the deprivation is sufficiently serious that 'the constitutional line has been crossed.'" *Wood v. Ostrander*, 879 F.2d 583, 589 (9th Cir. 1989) (quoting *Rutherford v. City of Berkeley*, 780 F.2d 1444, 1447 (9th Cir. 1986)).  Under the Fourteenth Amendment's substantive due process prong, the "shocks the conscience" test is applied.  *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  The threshold question is "whether the behavior of the

governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id*. at 848 n.8.

"Substantive due process vindicates those interests which are fundamental and . . . may not to be used as a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Brittain v. Hansen*, 451 F.3d 982, 995 (9th Cir. 2006) (internal quotation omitted). Generally, substantive due process does not cover tortious acts of government agents. *County of Sacramento*, 523 U.S. at 847. "The due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm," but deliberate conduct by a government official that is intended to harm is the sort of official action most likely to rise to the conscience-shocking level. *Id.* at 848-49.

Mr. Cullum argues that the conduct of Mr. Wiser shocks the conscience because Mr. Wiser had no authority to use any force against him, and the force was applied deliberately. *Plaintiff's Memorandum in Opposition*, Dkt. 17 at 4. Mr. Cullum relies on *Gregory v. Thompson*, a case in which a justice of the peace in Arizona got up from his desk, moved into the gallery of his courtroom, and proceeded to throw a member of the public to the floor, jump on him, and pummel him. 500 F.2d 59, 62 (9th Cir. 1974).

In *Gregory*, the Ninth Circuit stated that it "is well established that § 1983 provides a remedy for one who has been the victim of an assault and battery at the hands of a person acting under color of state law . . . The right violated by an assault has been described as the right to be secure in one's person, and is grounded in the due process

clause of the Fourteenth Amendment." *Id.* Though decided prior to *County of Sacramento*, it is fair to say that the conduct in *Gregory* shocks the conscience.

Other circuits have held that most batteries are too trivial to amount to a deprivation of liberty. *Haberthur v. City of Raymore,* 119 F.3d 720, 723 (8th Cir. 1997) ("Section 1983 is intended to remedy egregious conduct, and not every assault or battery which violates state law will create liability under it."); *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002) ("Not every inappropriate or unwanted touching by a public official . . . can amount to the 'brutal and inhumane abuse of official power' necessary to demonstrate a violation of an individual's bodily integrity sufficient to support a constitutional violation."); *Alexander v. DeAngelo,* 329 F.3d 912, 916 (7th Cir. 2003) (the liberty protected by the due process clause of the Fourteenth Amendment includes bodily integrity and is infringed by a serious, as distinct from a nominal or trivial, battery).

Mr. Cullum's allegations fail to shock the conscience. Mr. Cullum alleges only that Mr. Wiser "struck [him] in the chest three times" and "physically blocked [his] path and continued to verbally abuse him." Mr. Cullum makes no *specific* allegations regarding injuries suffered, medical attention, trauma, inability to work, or psychological scarring. The only statements regarding injuries are conclusory: "The actions of Defendants directly and proximately caused Plaintiff to suffer pain and suffering, emotional distress, loss of enjoyment of life, loss of earnings and other employment benefits, and other damages." *Proposed Amended Complaint*, Dkt. 11-1 at ¶ 55. Though clearly inappropriate, the conduct of Mr. Wiser is best characterized as a nominal battery;

it cannot be characterized as inhumane, an abuse of power, or conscience-shocking. Tempers often flare amongst co-workers, even to the point of physical altercations, but Constitutional claims are not the province of such trivial matters. Mr. Cullum's remedy, if any, lies in state tort law and his first claim, relating to Mr. Wiser, is dismissed without leave to amend.

### b. Defendants Simonet/Teton County

Taking as true Mr. Cullum's allegations that Teton County and Mr. Simonet failed to protect him from Mr. Wiser and failed to train Mr. Wiser, the court must determine whether such allegations state a plausible substantive due process claim.

As a general rule, members of the public have no constitutional right to sue state actors who fail to protect them against harm inflicted by third parties. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 197 (1989). This general rule is modified by two exceptions: (1) the "special relationship" exception; and (2) the "danger creation" exception. *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992). The "special relationship" exception is inapplicable in this case because Mr. Cullum was not in the custody, or some state analogous thereto, of the Defendants. *Id.*

Mr. Cullum argues only the "danger creation" exception.[1] This exception requires allegations "that the Defendants took affirmative steps to place [the plaintiff] at significant risk, and that they knew of the risks." *Id.* at 122. The facts of *L.W.* certainly

---

[1] The state-created danger doctrine applies in actions brought by public employees as well as private parties. *L.W. v. Grubbs*, 974 F.2d 119, 122 (9th Cir. 1992).

exhibit the affirmative creation of a serious risk: officials at a medium-security prison assigned a female nurse to work alone with a prisoner who was a violent sex offender. Once the two were alone, the prisoner assaulted, kidnapped, and raped the nurse. 974 F.2d at 120. Also illustrative is *Wood v. Ostrander*, in which a victim in a high crime area was raped when a police officer impounded the car in which the victim was a passenger, leaving her stranded. 879 F.2d 583, 589-90 (9th Cir. 1989).

Mr. Cullum's claim fails for two reasons. First, the "danger creation" exception permitting attribution of indirect liability to state actors only applies to those harms inflicted directly by <u>private</u> third parties who are not themselves liable under § 1983. *See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 n.2 (9th Cir. 2006); *Kinzie v. Dallas County Hosp. Dist.*, 106 Fed.Appx. 192, 195 (5th Cir. 2003) (per curiam) (unpublished opinion) (affirming dismissal of state-created danger claim for failure to state a claim upon which relief can be granted, because plaintiff "did not allege that he was harmed by a third party" but rather by a state actor). This is logical because there is no need for indirect § 1983 liability in cases where the more direct, proximate cause of the harm flows from an actor who personally falls within the reach of § 1983.

Secondly, assuming *arguendo* that the "danger creation" exception is applicable, Mr. Cullum has not alleged facts plausibly supporting a claim that Teton County and Mr. Simonet affirmatively acted to place him in <u>significant</u> danger. No affirmative actions were taken that turned a safe or neutral work situation into a dangerous one, and Mr. Cullum's alleged danger, the threat of mild physical violence at the hands of Mr. Wiser,

pales in comparison to the harms suffered by the women in *L.W.* and *Wood*. The Defendants' motion to dismiss Plaintiff's bodily integrity claim relating to Defendants Simonet and Teton County is granted.

 2. Termination Process

Mr. Cullum alleges that Teton County and Mr. Simonet deprived him of due process by failing to provide him a name-clearing hearing subsequent to his termination, as required by both (1) Teton County's employment policies and (2) the Fourteenth Amendment. It is undisputed that no such hearing occurred; the court must thus determine whether such facts give rise to a plausible claim for relief.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Due process is implicated when, in connection with termination, a public employer makes a charge that might seriously damage the employee's standing and associations in the community, or impose a stigma foreclosing other employment opportunities. *Campanelli v. Bockrath*, 100 F.3d 1476, 1478 (9th Cir. 1996). An at-will employee, though ineligible for a pre-termination hearing, is entitled to a name-clearing hearing. *Eklund v. City of Seattle Mun. Court*, 628 F.3d 473, 484 (9th Cir. 2010) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 & n.12 (1972)). A name-clearing hearing is required where a non-tenured employee has been stigmatized in the course of a decision to terminate his employment and the employer creates and

disseminates a false and defamatory impression about the employee's termination.  *Codd v. Velger*, 429 U.S. 624, 627-28 (1977).  Similarly, the Teton County employee manual states that a terminated employee has the right to a name-clearing hearing if such a hearing is requested within fourteen days subsequent to a termination casting the employee in a negative light.

The Defendants argue that dismissal of this claim is appropriate because Mr. Cullum failed to allege that any false, stigmatizing impression was disseminated by the Defendants.

The Defendants' argument fails because Mr. Cullum was given a termination notice stating that he had been insubordinate, damaged county property, failed to follow instructions, and engaged in abusive conduct.  *See Cox v. Roskelley*, 359 F.3d 1105, 1112 (9th Cir. 2004) ("We now hold explicitly that placement of the stigmatizing information in [a plaintiff's] personnel file, in the face of a state statute mandating release upon request, constituted publication sufficient to trigger [a plaintiff's] liberty interest under the Fourteenth Amendment.").  Under Idaho Code § 9-340C, all personnel records, including employment history, of public employees are public record, excepting enumerated personal information such as home addresses and ethnicity.  Though not explicitly alleged, the written termination notice given Mr. Cullum presumably became part of his personnel file.

The Defendants alternatively argue that the amended complaint is fatally flawed because it expressly fails to allege the falsity of the allegations contained in Mr. Cullum's

termination notice.  To be actionable, a termination statement must be both false and stigmatizing.  The Defendants do not contend that the stated reasons for Mr. Cullum's termination are not stigmatizing, only that Mr. Cullum failed to dispute their veracity.  This is a hyper-technical reading of the amended complaint that values form over substance.  The amended complaint states that Mr. Cullum was "accus[ed]" of the various violations in his termination notice.  *Proposed Amended Complaint*, Dkt. 11-1 at ¶ 58.  Characterizing a statement as an "accusation" is analogous to disputing its veracity.  Furthermore, the amended complaint, read as a whole, is replete with the suggestion, if not the direct statement, that Mr. Cullum's termination was pretextual.

The amended complaint is technically deficient in two areas: it fails to expressly allege that the stigmatizing statements were false and that they were placed in Mr. Cullum's personnel file.  When ruling on a motion to dismiss, however, the Court must construe the pleadings in the light most favorable to the nonmoving party, *Knievel v. ESPN*, 395 F.3d 1068, 1072 (9th Cir. 2005).  The amended complaint states a plausible due process claim because Mr. Cullum was denied the name-clearing hearing owed him due to the false, stigmatizing statements disseminated by the Defendants.  The Defendants' motion to dismiss Plaintiff's due process termination claim is denied.

3.    <u>State Law Tort Claims</u>

The Defendants argue that the Court should decline to exercise supplemental jurisdiction over Mr. Cullum's state law tort claims (Counts Three though Five) based on their belief that both Mr. Cullum's federal claims warrant dismissal.

As a general rule, a court exercising original jurisdiction over an asserted claim involving federal law has supplemental jurisdiction over state law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a state law claim if (a) the claim raises a novel or complex issue of state law; (b) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (c) the district court has dismissed all claims over which it has original jurisdiction; or (d) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(a).

Maintaining supplemental jurisdiction over Mr. Cullum's state law tort claims is appropriate, efficient, and judicially economical. There are no novel or complex issues of state law that render them difficult to adjudicate, the parties and the controversy are the same, the state law tort claims do not predominate over the retained Constitutional claim, and no other compelling reasons are cited for the declination of supplemental jurisdiction. The Defendants' motion to dismiss Plaintiff's state law tort claims is denied.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion to Amend (Dkt. 11) is **GRANTED**.

2. Defendants' Motion to Dismiss (Dkt. 15) is **GRANTED in part and Denied in part.** As explained in this decision, it is granted with respect to the substantive due process claims related to the violation of bodily

integrity, but is denied in all other respects.

DATED:  **March 7, 2011**



Honorable B. Lynn Winmill
Chief U. S. District Judge